ASA D. WRIGHT, Probate Justice of Menard county, for the use, &c., plaintiff in error, *v.* JOHN BENNETT *et. al.*, defendants in error.

### *Error to Menard.*

Under the fifth section of the *"Act to provide for the maintenance of illegitimate children,"* approved January 23d, 1827, the father, after entering into the bond required by said section, may demand, and is entitled to the possession, control and charge of the child. If the mother refuses to surrender it, he is discharged from his liability upon the bond, so long as she continues to refuse; if she surrender it, the father is not required to give a further bond; but he is bound for its maintenance, support and education thereafter, during its minority, in the same manner as though it had been born in lawful wedlock.

By the Common Law, the reputed father of an illegitimate child was not entitled to its custody; but, under the statute, after giving the requisite bond, he is entitled to such custody.

DEBT in the Menard Circuit Court, brought by the plaintiff in error, for the use of an illegitimate child of Jane Davidson, against Richard E. Bennett, and John Bennett, his security. The cause came on to be heard before the Hon; Samuel H. Treat, at the June term 1845, upon a demurrer to a special plea, the substance of which is set forth in the Opinion of the Court. The demurrer was overruled, and a judgment entered in favor of the defendant.

*T. L. Harris*, for the defendant in error.

The statute requires the execution of a bond by the putative father, that *he* will properly support and maintain the child, before he has any right to demand the child. R. L. 336.

That such is the proper construction of the statute is evident from the object of laws concerning bastardy to protect the public from the expense of their maintenance, and to compel the father to support the child. Such being the design of the law, it must be construed to meet the end in view. 1 Black. Com. 60, 61; 1 Kent. Com. 462, *et seq*. The statute is remedial and must be construed to meet the objects intended. 1 Kent's Com. 465.

Giving the father the right of custody of the child, is an

infraction of the Common Law, and this statute must be strictly construed. *Rex* v. *Soper*, 5 Term R. 278; 4 Taunt. 509, 510.

From the conditions expressed in the statute, two bonds must have been contemplated, and such is clearly the spirit of the law. Any other construction is fraught with injustice and absurdity.

*A. Lincoln,* for the defendants in error.

Only one bond is necessary under the statute. A putative father should have a right to the custody of the child. The rule of the common law, it is admitted, did not permit it, but we are to be governed by the statute in this case.

The Opinion of the Court was delivered by

PURPLE, J.*   The record in this case shows that, on the 4th day of June, A. D. 1844, Richard E. Bennett was convicted of being the father of an illegitimate child by one Jane Davidson, and was adjudged by the Court to pay the sum of forty dollars annually from the 6th day of November, A. D. 1843, for the period of seven years, for the support, maintenance and education of said child. That he entered into a bond with John Bennett as his security, pursuant to the 5th section of the Act of 23d January, 1827, entitled an "*Act to provide for the maintenance of illegitimate children,*" in the penal sum of five hundred dollars. The declaration charges the non-payment of the money, according to the terms of the bond as a breach of the condition thereof.

The defendants pleaded that on the 8th day of June, A. D. 1844, Richard E. Bennett demanded of Jane Davidson, the mother of the child, the possession, control, and charge of the child, and that she refused to surrender it; and that before the commencement of this suit, to wit, on the said 8th day of June, 1844, they, defendants, tendered the plaintiff $3·55, which was all that was then due upon the said bond.

To this plea there was a demurrer, which the Court over-

*WILSON, C. J., and Justices LOCKWOOD and CATON did not sit in this case.

ruled, and rendered judgment in bar of the plaintiff's action, and this decision is here assigned for error.

The questions presented, involved the construction of the section of the Act before referred to. It provides that "the defendant or reputed father, (of an illegitimate child, after conviction,) shall give bond and security for the due and faithful payment of such sum of money as shall be ordered to be paid by the said Court, which shall be made payable quarter-yearly to the Judge of the Court of Probate, and his successor in office for the county in which the prosecution aforesaid was commenced, and the same, when received shall be laid out and appropriated from time to time by the said Judge, under his order and direction, for the purposes aforesaid; provided always that the said reputed father, after giving bond with approved security to the Court of Probate, in the said county, conditioned for the suitable maintenance of any such child, for the term aforesaid, shall be permitted to take charge and have the control of said child. And from the time of said father taking charge of such child, or should the mother refuse to surrender the said child when so demanded by the said father, then, and from thenceforth the said father shall be released and discharged from the payment of all such sum or sums of money as may thereafter become due against the said father, for the support, maintenance and education of any such child."

A prior portion of the same section provides that upon conviction, the reputed father "shall be condemned by the judgment of the said Court, to pay such sum of money not exceeding fifty dollars, yearly, for seven years, as in the discretion of the said Court may seem just and necessary for the support, maintenance, and education of such child."

Now, it is contended by the plaintiff's counsel, that before the reputed father can demand the child, and thereby, (if the mother refuse to surrender it,) release himself from the obligations of the bond executed to the Probate Judge (now Probate Justice of the Peace,) under the order and direction of, and pursuant to the judgment of the Court, he must execute another bond with security, to the same Court of

Probate, conditioned for the suitable maintenance of the illegitimate child. I regret that, upon a careful and attentive consideration of the law, I can find nothing in its various provisions to warrant this construction, and am reluctantly compelled to admit that, if the reputed father of an illegitimate child, under the law as it existed at the time of the commencement of this suit, will have the inhumanity, in its helpless and dependent infancy, to demand its surrender by the mother, the law, upon her refusal, imposes upon him no further obligation to aid in its maintenance and support, at least so long as she persists in her refusal.

The bond into which he is required to enter by the judgment of the Court, is conditional, for the support, maintenance and education of the child; and the proviso of the Act, under which it is urged that the second bond is required is, "that the said reputed father, after giving bond, with approved security, conditioned for the suitable maintenance of such child, for the time aforesaid;" evidently referring to the bond to be executed upon his conviction, "shall be permitted to take the charge, and have the control of his said child;" and that from the time of taking such possession, or in case of refusal to surrender it by the mother, "the said father shall be released and discharged from the payment of all such sum or sums of money as may thereafter become due against him for the support, maintenance, and education of such child." The law is plain, and admits of but one interpretation. But one bond is required. If this be given, and the child unnaturally and unfeelingly demanded, it must be surrendered, or the unfortunate mother must struggle with her own adversity as best she may.

By the Common Law, the reputed father was not entitled to the custody of his illegitimate children. By the provisions of our statute, under the circumstances of this case, he is, and we are clearly of opinion, that if he elect in such cases to take them into his care and charge, he would thereafter during their minority become bound for their maintenance, support, and education, in the same manner as though they had been born in lawful wedlock. That he thereby acknowl-

edges them as his own, and shall not afterwards be permitted to deny his obligation as a parent to his offspring. We hold that this is but the reasonable intendment of the law which confers upon such a father the custody of his children; and that the Legislature did not intend that, when he had once thus chosen to demand it of the mother, that his duties towards it should 'cease at the 'expiration 'of the period of seven years, the time limited in his bond for its support, and then be at liberty to thrust it forth upon the world's charity, friendless and unprotected.

The judgment of the Circuit Court in this case, is affirmed with costs.

*Judgment affirmed.*