**Joan Vysoky, Plaintiff-Appellant, v. Le Roy Vysoky, Defendant-Appellee.**

**Gen. No. 51,354.**

First District, Third Division.

June 29, 1967.

Albert H. Werner and Crowley, Sprecher, Barrett & Karaba, of Chicago (Robert A. Sprecher, of counsel), for appellant.

Meyer Weinberg, of Chicago (Meyer Weinberg and Harry G. Fins, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

This is an appeal from an order denying the plaintiff's petition that a divorce decree be amended to award her permanent custody of the two minor children of the parties.

The plaintiff and defendant, Joan and LeRoy Vysoky, were married in 1958. Two children were born of their marriage, James and Donna. In 1962 the plaintiff filed a complaint for divorce and an uncontested decree was entered in June 1963. The decree incorporated an agreement between the parties which provided that custody of the children was to be in the father for ten months and in the mother for two months of each year, with each having the right of visitation. It also provided that the plaintiff was to quitclaim her interest in the family home in exchange for a cash payment by the defendant. Eighteen months after the decree the plaintiff filed the

petition for change of custody and the petition was granted. The defendant moved for a rehearing, his motion was granted and the case was assigned to another judge. After hearing the testimony of witnesses and the arguments of counsel, the judge denied the petition.

Some time after the divorce decree the defendant sold the marital residence and moved with his children to his parents' house. His younger brother and sister also live there. The house has two floors. On the lower level are a kitchen, a living room, two bedrooms and a bathroom containing a water closet but no facilities for washing. There are two bedrooms and a living room on the upper level, and a bathroom with a tub and water closet but no sink. However, there is a sink in the kitchen on the lower level and another kitchen sink on the upper level. The house, heated by gas space heaters, is well furnished, but the furniture is old and worn.

Donna, three years old, shares a bedroom with the defendant; she sleeps on an upper bunk bed. James, age six, formerly shared the same kind of bed with the defendant. The defendant and his mother testified that James now sleeps alone in a bedroom containing twin beds, a chest of drawers and a child's desk. The plaintiff testified that he shares a small bedroom with the defendant's 16-year-old brother, both sleeping on bunk beds. James' attendance at school is perfect and his teacher says he is doing fine. On Sundays he and his sister accompany their father and grandmother to church.

The defendant has worked for the same employer for 13 years; he works a forty-hour, five-day week, but he is home with his children every night except one night a week when he bowls. He plays with the children, takes them to the park, helps James with his homework, supervises their baths and puts them to bed at night.

While the defendant is away his mother looks after the children. She sees that they are dressed in the morning, prepares their meals, washes their clothes and cleans their

rooms, and occasionally disciplines them. She testified that the children are well-mannered and good, and are taught to love and obey their father and mother. She said at times they get mischievous and get her aggravated. One of the plaintiff's witnesses testified that the grandmother said the children sometimes get on her nerves but that she loved them very much and was willing to care for them. A neighbor of the defendant whose son is James' playmate testified that the Vysoky children are clean and healthy, happy and well-mannered.

The plaintiff remarried about a year after the divorce and has had a child by her present husband. Their home is in a suburban community. It has three bedrooms, a living room, a kitchen, a dinette area and a full basement. The furnishings are new and complete. Most of the houses in the neighborhood are newly built. The plaintiff testified that if she were awarded custody Donna and James would each have private bedrooms. Her husband, who is steadily employed, testified that he was willing to have the children and that he liked them as much as he did his own. The plaintiff is not employed and would be able to take care of them during the day. The children presently live with her and her husband on weekends and for two months in the summer.

There was some dispute as to the children's diet and medical requirements. The plaintiff testified that their diet was inadequate and their medical care insufficient. The defendant and his mother testified about the food they ate and the dental and medical attention they received.

The divorce decree, which awarded custody to the defendant, is res judicata of the defendant's fitness as determined by the known facts in existence at the time of the decree. Kline v. Kline, 57 Ill App2d 244, 205 NE2d 775 (1965) ; Thomas v. Thomas, 233 Ill App 488 (1924). To justify a modification of the decree and a change of custody, the evidence must establish that the parent

to whom the children were originally awarded is unfit to retain custody or that a change of conditions makes a change of custody in their best interest. Stickler v. Stickler, 38 Ill App2d 191, 186 NE2d 542 (1962). The party seeking to alter the custody provisions has the burden of proving that the children's best interest requires such a change (Hirth v. Hirth, 59 Ill App2d 240, 207 NE2d 114 (1965)) for the paramount concern must always be the welfare of the children. Dunning v. Dunning, 14 Ill App2d 242, 144 NE2d 535 (1957).

It is the plaintiff's position that the evidence showed that the grandmother, due to her age and her responsibilities to her own family, is too busy to give proper attention to the children's diet, health and welfare. It is suggested that it was the commencement of the judicial inquiry into their custody that spurred her to rearrange the sleeping quarters, take James to the dentist and do whatever else she could to rectify her past slackness. The plaintiff also argues that her home and neighborhood are materially more advantageous for the children, and that she is able to give them the constant attention and love their grandmother has not the time to give.

The record does not show that the defendant failed to provide the children with supervision and love; rather it fully bears out the statement of the trial court that the defendant ". . . is a good father and takes good care of . . . [the children]." The defendant pays the food, clothing, medical and dental expenses of his children. He plays with them, disciplines them, joins them in religious worship, makes sure they are bathed regularly, watches over James' schoolwork. While the defendant is away his mother takes care of them and the evidence indicates that she conscientiously performs her duties. There is evidence of isolated incidents of minor neglect in her supervision, but such things occasionally happen in the best of families. Moreover, the alleged instances of

neglect were denied by the defense witnesses, and the trial judge's decision on the credibility of the witnesses cannot be said to be against the manifest weight of the evidence.

■ The trial judge also observed that the children now reside in an older neighborhood which may not be as good as the one in which the plaintiff resides, but he nonetheless concluded that he could not see anything in the evidence which would warrant an order that it would be in the best interests of the children that custody be transferred to the plaintiff. The fact that the plaintiff can offer the children a more modern and perhaps more comfortable residence than can the defendant does not of itself justify the conclusion that their welfare demands that they live permanently with her. And there is no arbitrary rule that requires custody to be awarded the mother in every case in which she is found to be a fit parent. Jenkins v. Jenkins, 81 Ill App2d 67, 225 NE2d 698; Corcoran v. Corcoran, 79 Ill App2d 328, 224 NE2d 611 (1967); Carlson v. Carlson, 80 Ill App2d 251, 225 NE2d 130 (1967). In the present case the court found that the father was also a fit parent and that there were no altered circumstances which justified removing the children from him.

■ ■ In ruling on an application for a change of custody, the trial court is entrusted with wide discretion. Israel v. Israel, 8 Ill App2d 284, 131 NE2d 555 (1955). The order of the court is adequately supported by the evidence. The fact that there is conflicting evidence does not warrant disturbing the court's conclusion. Kokotekian v. Kokotekian, 23 Ill App2d 171, 161 NE2d 712 (1950); Bateman v. Bateman, 337 Ill App 7, 85 NE2d 196 (1949).

■ Another point raised by the plaintiff is that the trial court erred in refusing to permit her to relate the events which led to the divorce and to prove that she was obliged to give up custody of the children, contrary to

311

her intention, because of the mental strain she was under and because she had been told she could not get the divorce unless she did so. The plaintiff failed to include this point in the Points and Authorities in her brief. Appellate Court Rule 5(2)(k) requires the propositions relied upon in support of the appeal to be included in the Points and Authorities, and her failure to include this point is deemed a waiver. Varap v. Varap, 76 Ill App 2d 402, 222 NE2d 77 (1966).

The order is affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.