THE PEOPLE *ex rel.* BARBARA IRBY, Petitioner-Appellant, *v.* EDMUND DUBOIS, a/k/a Edward Terrell, Respondent-Appellee.

First District (5th Division)   No. 63237

Opinion filed August 13, 1976.

Allen L. Ray, of Chicago, for appellant.

Shapiro & Margolis, of Chicago, for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Petitioner[1] appeals from a judgment denying her petition for a writ of habeas corpus and awarding custody of her twin daughters to respondent,[1] the natural father.

The parties met in 1963 and respondent began residing with petitioner and her children soon thereafter. The parties never married. On July 21, 1973, petitioner gave birth to twin daughters. Respondent moved out of petitioner's home in March of 1974 and married Barbara Jean Dubois on April 11, 1974.

On April 14, 1974, respondent came to petitioner's apartment and, representing that he wanted to show the babies to friends, took the twins away. Although he stated that he would bring them home that evening, he never returned.

Petitioner, having failed to regain the children or contact respondent, filed a petition for habeas corpus on June 4, 1974. The trial court which initially heard the cause denied the petition and awarded temporary custody to respondent. That order was subsequently vacated and a new trial was granted. Prior to trial respondent filed a petition for adjudication of wardship in which he sought to have the children declared wards of the court and placed in his custody.

Since the facts adduced at trial were well stated in the trial court's memorandum opinion and are not now in dispute, we quote from it extensively:

> " * * * The evidence reveals that both parents are fit to have custody, but that the natural father is married and can provide a more stable family life with more material advantages to the minor children than the mother can. However, the evidence also shows that the mother had physical custody of the children from birth until the time they were about nine months of age at which time the natural father obtained physical custody of the children by

---

[1] The parties were erroneously designated in the title as plaintiff and defendant instead of petitioner and respondent.

deceiving the mother. The children are now about twenty-one months of age.

"EDMUND DUBOIS is and for some time has been employed by Schenkers International Forwarders, Inc. as a driver-salesman. He testified that he is 53 and in good health. When he began living with petitioner in 1963 a divorce action was pending to dissolve his marriage of 14 years to one Gladys Branch Terrell. There were no children of that union. His present wife BARBARA DUBOIS appeared as a witness at the hearing and testified that she was educated in the Chicago Public Schools and had received college training in several local schools including Moody Bible Institute. She further testified that she has been mothering the twins since they were nine months old; that she and DUBOIS want to keep them; and that she would give their care priority over her pastoral duties. DUBOIS, his wife and the twin girls live in a two apartment building at 834 East 88th Street in Chicago.

"Petitioner BARBARA IRBY lives in the Chicago Housing Authority Project at 220 East 63rd Street with four of her five children by her marriage to John H. Irby from whom she has been divorced since 1967. The ages of the four children range from 12 to 17. The fifth child, Belinda age 20, is married and out of the household. MRS. IRBY has not remarried. She is not employed. She receives public assistance. During the latter part of 1971 and the first six months of 1972 she was in a tuberculosis sanitarium. She testified that today the T.B. is inactive and her condition stable. She has no contact with the Sanitarium but goes to the Clinic at the Englewood Health Center every six months.

"This court ordered the probation department to make a social investigation that would include an assessment of the life patterns and the homes of the parties. Pursuant to this order an investigation was made by Probation Officer Birchette who testified at the hearing and submitted a written report which was received into evidence. The report states

> ' * * * that the best plan for the twins at this time would be to remain with their natural father who along with his wife and mother are providing adequate care and nurturing for the babies. However, it is felt that the mother should be granted visiting rights.'

On the basis of all the facts and circumstances established by the evidence, this court finds that the interests of the twins would best be served by not disturbing the custody of the natural father. An order will issue denying the petition for Adjudication of Wardship,

denying the petition for habeas corpus, fixing BARBARA IRBY'S rights of visitation and assessing costs."

On appeal petitioner contends that (1) respondent's conduct in taking the children from her prejudicially altered her position before the trial court, (2) the judgment was against the manifest weight of the evidence and (3) the trial court improperly considered the probation officer's report which was not admitted into evidence.

OPINION

■■ In *Vanderlaan v. Vanderlaan*, 9 Ill. App. 3d 260, 292 N.E.2d 145, we held that the ruling by the Supreme Court of the United States in *Stanley v. Illinois*, 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208, indicates that in a custody proceeding a father is not barred from obtaining custody of his children born out of wedlock. Since our decision in that case, other jurisdictions have held similarly, considering the natural father of such children to have rights of custody as would a father of legitimate children upon a dissolution of a marriage. *(Brown v. Bray* (Fla. 1974), 300 So. 2d 668; *Marshall v. Stefanides* (1973), 17 Md. App. 364, 302 A.2d 693; *Orezza v. Ramirez* (1973), 19 Ariz. App. 405, 507 P.2d 1017; *Sparks v. Phelps* (Ore. App. 1975), 540 P.2d 397; *Slawek v. Stroh* (1974), 62 Wis. 2d 295, 215 N.W.2d 9; *E. v. T.* (1973), 124 N.J. Super. 535, 308 A.2d 41; *Cf. In the Matter of Brenda H.* (C.P. Cuyahaga County 1973), 66 Ohio Op. 2d 178, 305 N.E.2d 815; *Turner v. Saka,* 90 Nev. 54, 518 P.2d 608.) This is in recognition of the principle that a determination concerning custody should be premised upon a consideration of what would be in the best interests of the children. As was stated in *E. v. T.,* 124 N.J. Super at 540-41, 308 A.2d at 43-44:

> "It is basic, however, that in all matters relating to the custody of minor children the paramount consideration of this and any other court is and should be the safety, happiness, physical, mental and moral welfare of the child. [Citations.] Each case must be decided on its own facts and circumstances, and neither parent has a superior right to custody."

We believe this to be the proper standard for determining who should be awarded custody, regardless of legitimacy.

In Illinois no presumption exists favoring custody in either parent. While giving custody to the mother may well be the usual result of a custody hearing, there is no rule requiring this finding. *(Anagnostopoulos v. Anagnostopoulos,* 22 Ill. App. 3d 479, 317 N.E.2d 681.) In *Marcus v. Marcus,* 24 Ill. App. 3d 401, 407, 320 N.E.2d 581, 585, the court stated:

> "[I]t should be noted that there is today no inflexible rule which requires that custody of children * * * be vested in the mother. Equality of the sexes has entered this field. The fact that a mother is fit is only one facet of the situation and, standing by itself, it does

not authorize a denial of custody to the father, when this appears necessary because of other considerations."

Although earlier cases did express a preference for the mother to be entrusted with the custody of children of tender years, *(Nye v. Nye,* 411 Ill. 408, 105 N.E.2d 300; *People ex rel. Bukovich v. Bukovich,* 39 Ill. 2d 76, 233 N.E.2d 382) our 1970 Illinois constitution now provides that equal protection of the law shall not be denied or abridged because of sex. (Ill. Const. 1970, art. 1, sec. 18.) As the trial court in the instant case properly concluded: "[N]o presumption of preference applies." The trial court arrived at its conclusion after a careful examination of this doctrine and its history:

"The early Illinois case of *Wright v. Bennett* 7 Ill. 587 (1845), in which the attorney for the defendant in error was a person named A. Lincoln, enunciated the common law rule that as between the mother and father of an illegitimate child the mother's right of custody is superior and the father's right secondary. A mother was assumed not to have outside employment. She was expected to be at home caring for the child. Further it was thought that if a young child could not have both maternal and paternal influences that it would benefit more from a mother's care. Today, women are often employed, and present day authorities assert that 'fathering' can be as essential as 'mothering' for both boys and girls.

"Illinois courts have taken judicial notice of the recent emancipation of women socially and economically. Recent decisions have limited longstanding presumptions based upon sex in the matter of alimony, *Tan v. Tan* 3 Ill. App. 3d 671 279 NE2d 486 (1972) and child support *Plant v. Plant* 20 Ill. App. 3rd 5, 312 NE2d 847 (1974). It is reasonable to expect that courts in awarding child custody will take judicial notice of the changing social and economic conditions of women. The factual basis, if there was one, for the so called 'tender years doctrine' is gone."

Petitioner initially contends that respondent's action in taking the children improperly altered the posture of the parties to her disadvantage. It is claimed that her burden of proof was increased from a mere showing of fitness to proving that she was more fit than respondent since the trial court erroneously applied a presumption favoring the custodial parent.

The trial court correctly rejected any presumption favoring the parent who was presently caring for the children:

"While it may be true that the natural mother has a superior right to custody as against the natural father when she has physical custody of the children, that rule is not controlling in this case because the natural father has physical custody of the children."

Petitioner's contention that these comments indicate that the court applied the rule in favor of respondent cannot be sustained. The trial judge was aware of the existence of such a presumption but refused to apply it in favor of either party. It is true that once a right to custody has been *judicially* determined, the parent deprived of custody has a greater burden in subsequently proving that a change in custody is warranted. *(Vysoky v. Vysoky,* 85 Ill. App. 2d 306, 230 N.E.2d 3; *King v. Vancil,* 34 Ill. App. 3d 831, 341 N.E.2d 65; *Holloway v. Holloway,* 10 Ill. App. 3d 662, 294 N.E.2d 759.)[2] However, in a proceeding to initially determine custody, no greater burden is placed on either parent. In the present case the trial court considered both parties to have equal standing to obtain custody.

■■ Furthermore, although a suit involving custody presents an adversary proceeding between the parties, *(Henrikson v. Henrikson,* 26 Ill. App. 3d 37, 324 N.E.2d 473) the State also has an interest in the outcome and the child is considered a ward of the court and is under its special protection. *(Gerst v. Gerst,* 349 Ill. App. 201, 110 N.E.2d 470; *Oakes v. Oakes,* 45 Ill. App. 2d 387, 195 N.E.2d 840.) To the extent that there is a burden of proof in such matters, it is that each parent present the court with evidence that custody in that parent would be in the child's best interest. *(Anagnostopoulos; Henrikson.)* Therefore, although respondent's conduct necessitated that petitioner file an action, no greater amount of proof as to her fitness was required.

Petitioner next contends that the award of custody was against the manifest weight of the evidence. At the outset it should be noted that the determination of custody is within the discretion of the trial judge and will not be disturbed unless it appears that a manifest injustice has been done or that the trial court has abused its discretion. *Anagnostopoulos; Barbara v. Barbara,* 110 Ill. App. 2d 189, 249 N.E.2d 269.

■■ In the instant case the trial court's finding that it was in the best interests of the children that custody should be with the father was amply supported by the evidence. It was based upon the more stable environment and family life which would be afforded the children were the father to be awarded custody. Stability of environment is an

---

[2] In *Vysoky* at 309-10, the considerations to be given to a request for modification of a custody decree were set forth:

> "To justify a modification of the decree and a change of custody, the evidence must establish that the parent to whom the children were originally awarded is unfit to retain custody or that a change of conditions makes a change of custody in their best interest. Stickler v. Stickler, 38 Ill. App. 2d 191, 186 N.E.2d 542 (1962). The party seeking to alter the custody provisions has the burden of proving that the children's best interest requires such a change (Hirth v. Hirth, 59 Ill. App. 2d 240, 207 N.E.2d 114 (1965)) for the paramount concern must always be the welfare of the children. Dunning v. Dunning, 14 Ill. App. 2d 242, 144 N.E.2d 535 (1957)."

important factor to be considered in determining what is in the best interests of the children. *(Holloway; Cave v. Cave,* 2 Ill. App. 3d 782, 276 N.E.2d 793.) The court's conclusion was also premised upon the fact that respondent could provide more material advantages to the children, the health of the parents, and their past actions in affecting their fitness to have custody.

■■ Although the trial court took cognizance of respondent's conduct in taking the children from petitioner, it was determined that such conduct should not preclude him from being awarded custody:

"The fact that he obtained custody through deception, however unadmirable such conduct may have been, should not result in automatic award of custody to the mother. If such were to result the children become prizes to be awarded on the basis of parental misconduct not bearing any relevance to fitness. Parental misconduct, if any occurred, should be redressed in other ways and the court should focus only on which award of custody will best serve the interests of the children in this case."

Respondent's action was correctly viewed by the court as another factor to be considered in determining his fitness to have custody. What is of paramount importance is the welfare of the children, not punishment of the father. *(Fears v. Fears,* 5 Ill. App. 3d 610, 283 N.E.2d 709.) The trial court's determination that respondent should have custody of the children, despite finding that petitioner was also fit to have custody, cannot be said to be against the manifest weight of the evidence.

Petitioner also contends that the trial court improperly considered the social investigator's report since it was not admitted into evidence.

The social investigator who prepared the report testified fully about its contents during petitioner's case in chief. An examination of the record reveals that the witness testified for 18 pages concerning matters contained in the report and the manner in which those facts were obtained. At one point her testimony concerning the recommendation that the children remain with respondent was virtually identical to that portion of the report quoted in the trial court's opinion:

"THE WITNESS: * '* * I did observe the DuBois home. I felt in terms of nurturing and mothering that his present wife was providing the children with love and attention."

■■ We do not agree with petitioner's claim that it was reversible error for the trial court to consider the report. Petitioner has not indicated whether the witness' testimony failed to encompass any portions of the report, and in the absence of such a showing it must be assumed that the same or similar evidence was properly received during the social investigator's testimony. Therefore, prejudice to petitioner could not have resulted from a consideration of the report even if it were not formally

admitted into evidence. *Dembinski v. F. & T. Corp.*, 124 Ill. App. 2d 112, 260 N.E.2d 359; *Jacobs v. Holley*, 3 Ill. App. 3d 762, 279 N.E.2d 186; *Sullivan v. Fawver*, 58 Ill. App. 2d 37, 206 N.E.2d 492.

■■ The last issue to be decided is the contention that the trial court erred in considering the recommendation of the social investigator since her conclusion was based upon observations of the children solely in respondent's home thus depriving petitioner of the benefit of a fair comparison. The limitations which existed in the scope of the investigation were brought out and developed at trial during her testimony. Whatever weaknesses existed in this evidence affected the weight that it should be given. It was the function of the trial court, as the trier of fact, to weigh this evidence and determine its value. A court of review will not substitute its judgment for that of the trial court unless the ultimate decision was contrary to the manifest weight of the evidence. (*Anagnostopoulos; Hoffmann v. Hoffmann*, 40 Ill. 2d 344, 239 N.E.2d 792.) Since we have held that the evidence amply supports the judgment, we must reject this claim.

The decree of the trial court awarding permanent custody of the children to respondent subject to specific visitation rights in petitioner was proper and therefore the judgment denying her application for a writ of habeas corpus is affirmed.

Affirmed.

LORENZ, P. J., and SULLIVAN, J., concur.